IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:10-CV-95-D

MICHAEL GREGORY SASSER, )
)
             Plaintiff, )
)
v. ) **ORDER**
)
CITY OF WHITEVILLE, )
)
             Defendant. )

Michael Sasser ("Sasser" or "plaintiff") sued the City of Whiteville ("City" or "defendant") for race discrimination and retaliation and seeks declaratory relief and monetary damages based on claims arising under 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act, and North Carolina law. The City filed a motion to dismiss four of Sasser's claims for failure to state a claim upon which relief can be granted [D.E. 11]. Specifically, the City asks the court to dismiss Sasser's section 1981 claim, intentional infliction of emotional distress claim, negligent infliction of emotional distress claim, and negligent supervision and retention claim. Sasser responded in opposition [D.E. 16]. As explained below, the motion to dismiss is granted.

I.

Sasser, a black male, began working for the City in 1990. Amend. Compl. ¶ VII. In March 2008, the City terminated his employment. Id. ¶ VIII. When terminated, Sasser was a utilities supervisor. Id. ¶ VII. Sasser alleges, in conclusory statements, that he was "routinely subjected to disparate treatment due to race, in terms of the work conditions, privileges, benefits and work environment." Id. ¶ XI. Sasser also claims, again in conclusory fashion, that the city manager routinely subjected him to a racially hostile work environment, gave white employees preferential treatment, held Sasser to higher standards than non-black employees, and treated complaints received

about Sasser in a harsher manner than non-minority employees. See id. ¶ VIII. Sasser alleges that he complained on multiple occasions throughout 2007 and 2008 regarding the conduct of the city manager, but that the City failed to take action. Id. ¶ IX. Sasser claims that the City "knew or should have known" that its employees "were unjustifiably treating minority employees differently than non-minority employees." Id. ¶ XVI. Sasser claims that due to the City's race discrimination, he suffered emotional distress, "including but not limited to, headaches, chronic depression, insomnia, chronic anxiety, stress, 'nervous stomach,' and fear," and that he sought treatment from a medical doctor and was prescribed medication for these conditions. Id. ¶ XVII.

On May 25, 2010, Sasser filed his amended complaint, alleging: (1) racial discrimination, including hostile work environment and disparate treatment due to race, in violation of Title VII and 42 U.S.C. §§ 1981 and 1983; (2) wrongful termination in violation of Title VII, 42 U.S.C. §§ 1981 and 1983, and North Carolina public policy; (3) negligent supervision and retention; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional distress; and, (6) retaliation in violation of Title VII and 42 U.S.C. §§ 1981 and 1983.

On July 6, 2010, the City filed its motion to dismiss and answer, denying liability and asserting various affirmative defenses [D.E. 11, 13]. On July 26, 2010, Sasser responded in opposition [D.E. 16].

II.

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 563 (2007); Coleman v. Md. Ct. of Appeals, 2010 WL 4486748, at *2 (4th Cir. Nov. 10, 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006). In considering a motion to dismiss,

2

a court need not accept a complaint's legal conclusions drawn from the facts. Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

A.

The City contends Sasser's claims under 42 U.S.C. § 1981 should be dismissed because a claim under 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); accord Dennis v. County of Fairfax, 55 F.3d 151, 156 & n.1 (4th Cir. 1995); Roberson v. City of Goldsboro, 564 F. Supp. 2d 526, 528–29 (E.D.N.C. 2008). Sasser agrees. Thus, the motion to dismiss Sasser's section 1981 claim is granted.

B.

Sasser's claim of intentional infliction of emotional distress ("IIED") requires him to show: (1) that the defendant engaged in extreme and outrageous conduct; (2) that the conduct was intended to cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress. See Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). To be considered "extreme and outrageous" the conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493–94, 340 S.E.2d 116, 123 (1986) (quoting Restatement (Second) of Torts, § 46 cmt. (d) (1965)). Whether conduct qualifies as "extreme and outrageous" is a question of law for the court. See, e.g., Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

Under North Carolina law, it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of IIED. See, e.g., Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544–45 (E.D.N.C. 2008); Efird v. Riley, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004); Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 810–11 (M.D.N.C. 1999).

3

"[L]iability clearly does not extend to mere insults, indignities, [or] threats." Hogan, 79 N.C. App. at 493, 340 S.E.2d at 123 (citing Restatement (Second) of Torts, § 46 comment (d) (1965)). Rather, "[i]n cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching." Bratcher, 545 F. Supp. 2d at 545 (collecting cases).

Here, Sasser has failed as a matter of law to allege conduct sufficient to sustain his IIED claim. Instead, Sasser claims only that he was discriminated against and his rights were violated. As such, Sasser's IIED claim fails and is dismissed. See, e.g., Bratcher, 545 F. Supp. 2d at 545; Hogan, 79 N.C. App. at 493–94, 340 S.E.2d at 122–23.

C.

Sasser's negligent infliction of emotional distress ("NIED") claim relies on the same allegations he contends support his IIED claim. See Amend. Compl. ¶¶ XVII, XIX–XX. "When the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, [the complaint] is insufficient to state a claim for negligent infliction of emotional distress." Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002); see Mitchell v. Lydall, Inc., 1994 WL 38703, at *3 (4th Cir. Feb. 10, 1994) (per curiam) (unpublished); Bratcher, 545 F. Supp. 2d at 545; Sheaffer v. County of Chatham, 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004); Thomas, 157 F. Supp. 2d at 637. Moreover, in order to survive a motion to dismiss, plaintiff must first allege some evidence of negligence on the part of defendants. If there is no underlying "negligence," there is no claim for NIED. Bratcher, 545 F. Supp. 2d at 545; Best v. Duke Univ., 337 N.C. 742, 752, 448 S.E.2d 506, 511–12 (1994).

Here, Sasser's NIED claim fails because Sasser has alleged only intentional acts—not negligent acts—and allegations of intentional conduct cannot form the basis of a claim for negligent infliction of emotional distress. See, e.g., Mitchell, 1994 WL 38703 at *3; Bratcher, 545 F. Supp. 2d at 545–46. Accordingly, Sasser's NIED claim fails and is dismissed.

4

D.

Sasser's negligent supervision and retention claim is based on Sasser's allegation that he notified the City of the city manager's misconduct and the City failed act, which allowed the city manager's alleged misconduct to continue. See Amend. Compl. ¶¶ IX, XV–XVI, XVIII. To state a claim for negligent supervision and retention under North Carolina law, a plaintiff "must prove that the incompetent employee committed a tortious act resulting in injury to [the] plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." Smith v. Privette, 128 N.C. App. 490, 494–95, 495 S.E.2d 395, 398 (1998) (quotations omitted); see Smith v. First Union Nat'l Bank, 202 F.3d 234, 249–50 (4th Cir. 2000). Sasser cannot rely on either Title VII or 42 U.S.C. § 1983 as the underlying "tortious act" because these alleged violations are not common law torts under North Carolina law. See, e.g., McLean v. Patten Cmtys, Inc., 332 F.3d 714, 719 (4th Cir. 2003); Jackson v. FKI Logistex, 608 F. Supp. 2d 705, 707–08 (E.D.N.C. 2009). As a result, Sasser has failed to allege an underlying tortious act. Thus, Sasser's negligent supervision and retention claim fails and is dismissed.

III.

As explained above, defendant's motion to dismiss [D.E. 11] is GRANTED, and the court DISMISSES Sasser's section 1981 claim, his IIED claim, his NIED claim, and his negligent supervision and retention claim.

SO ORDERED. This 18 day of November 2010.

JAMES C. DEVER III
United States District Judge

5

Case 7:10-cv-00095-D   Document 21   Filed 11/18/10   Page 5 of 5